IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NIKKI PETRILLO, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:17-648- |
| | ) |
| GRANITE CITY COMMUNITY UNIT | ) |
| SCHOOL DISTRICT NO. 9; and | ) **JURY TRIAL DEMANDED** |
| HARRY BRIGGS, in his individual | ) |
| capacity, | ) |
| | ) |
|    Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Nikki Petrillo, by and through her attorney, John Stephen Brubaker of the Law Office of Van-Lear P. Eckert, PC, and for her Complaint, and in support thereof, states as follows:

### Nature of the Action

This action is brought to remedy unequal pay in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); discrimination on the basis of sex, in the terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); deprivation of rights, privileges, or immunities secured by the United States Constitution and laws under color of state law, via 42 U.S.C. § 1983 ("1983"); and for violations of the Illinois Equal Pay Act of 2003, 820 ILCS 112/ *et seq*. ("IEPA").

### Parties

1. Plaintiff Nikki Petrillo ("Nikki" or "Plaintiff") is a female, a United States citizen, and resident of Granite City, Madison County, Illinois.

2. Defendant Granite City Community Unit School District No. 9 (the "District")

1

is a political subdivision of the State of Illinois located in Madison County, Illinois, possesses all the usual powers of a corporation for public purposes, and in that name may sue and be sued.

  3.  The District is the employer of Plaintiff, the employee, as those terms are understood under Title VII, the EPA and the IEPA, at its Granite City Senior High School, 3101 Madison Avenue, Granite City, IL 62040.

  4.  Harry Briggs ("Briggs") is the former Superintendent of the District. He is sued for damages in his individual capacity under the EPA and 42 U.S.C. § 1983.

## Jurisdiction and Venue

  5.  This Court has subject matter jurisdiction of the EPA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 206(d).

  6.  This Court has subject matter jurisdiction of the Title VII claim under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e-5(f)(3).

  7.  This Court has subject matter jurisdiction of the 1983 claim under the United States Constitution and 42 U.S.C. §§ 1983 and 1988, as amended; as well as 28 U.S.C. §§ 1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure.

  8.  This Court has supplemental jurisdiction over the IEPA claims because the facts underlying the federal claims also give rise to claims under Illinois law, 820 ILCS 112/ (Illinois Equal Pay Act of 2003).

  9.  This Court has personal jurisdiction over the District because it is a political subdivision of the State of Illinois located in Madison County, Illinois.

  10.  Venue is proper against Defendant pursuant to 28 U.S.C. 1391(b)(1) and (b)(2). The actions complained of took place in this judicial district, evidence and employment

records relevant to the allegations are maintained in this judicial district, and the District is present and regularly conducts affairs in this judicial district; as well as through 42 U.S.C. § 2000e-5(f)(3) in that the Southern District of Illinois is a judicial district in the state of Illinois in which the unlawful employment practice is alleged to have been committed.

## Administrative Exhaustion of Title VII Claims

11. Plaintiff Nikki Petrillo filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") on or about September 29, 2016, complaining of acts of sex discrimination and unequal pay alleged herein.

12. The charge was timely filed, as Plaintiff complained about her 2016-2017 school year's pay in or around early September of 2016, the District refused to adjust it, Plaintiff continued to receive discriminatory pay with each paycheck; and Plaintiff filed an IDHR charge less than 180 days later; the charge was assigned Charge No. 2017SF0507.

13. The charge was also cross-filed with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 21B-2016-02178.

14. On or around June 21, 2017, Plaintiff received a Right to Sue letter from the EEOC giving her the right to file her Title VII claim in federal court within 90 days of receipt of such letter. (Exhibit A).

15. Plaintiff files this action on June 21, 2017, less than 90 days since the receipt of the EEOC Right to Sue letter.

## Factual Background

16. Nikki is a female Assistant Principal employed with Granite City Community Unit School District #9, at Granite City Senior High School, 3101 Madison Avenue, Granite City, IL 62040.

17. Nikki has earned a Master's degree in Educational Leadership and

3

Administration in 2006 and an Ed.S. in Curriculum Design in 2015.

18. Nikki's work performance has at all times met Respondent's expectations.

19. Nikki began teaching with Granite City School District in August of 2004 as a Special Education teacher.

20. At the beginning of the 2009-2010 school year, Nikki was promoted to an Administrator position; her Administrator position was labeled as Region I Program Supervisor, but her job duties consisted of that of an Assistant Principal.

21. Ever since Nikki began Administrator work, she has been paid substantially less than males working jobs of equal skill, effort, and responsibility, as well as jobs performed under similar working conditions—both at the same work location and at other schools in the district—with identical or nearly identical job descriptions.

22. The District has used an Administrative Salary Schedule to determine Administrator pay dating back at least to the 2009-2010 school year.  (Exhibit B).

23. The Administrative Salary Schedule groups the District's administrative jobs into ranked categories based presumably on level of responsibility and difficulty of the work, and assigns a step-based salary increase system for each job catetgory.

24. The District's practice is to hand out one step increase per year; except when, per their written policy, moving "horizontally" into a new job category, "there will be no level movement up or down." (Exhibit C).

25. Upon information and belief, when Nikki was promoted from Special Education Teacher to Administrator, her tenure as Administrator commenced at Step 1 on the District's Administrative Salary Schedule; the District started her out at $57,461 per year in base pay.[1]

---

[1] The District has only made available to Plaintiff salary schedules from the 2014-2015 school year onward; Plaintiff's estimates as to what step each salary corresponds to are based off of her best estimates possible under the circumstances.

26. A male comparator, Pat Curry, younger than Nikki and with essentially equal years of experience teaching, also began his tenure as Administrator in the District in the 2009-2010 school year; he started out making $63,111, or, upon information and belief, Step 3 on the District's Administrative Salary Schedule.

27. Nikki was surprised that her first Administrator paycheck was so low, and complained to Defendant Superintendent Harry Briggs ("Briggs") in August of 2009; Briggs angrily retorted that Nikki "should just accept [her] salary and be happy."

28. Nikki complained about her pay again on or around August of 2010 when her new contract for the 2010-2011 school year was again substantially less than other males in the district working the same job.

29. For the 2011-2012 school year, the District hired a new Administrator at Granite City High School, Jonathan "Skip" Birdsong ("Birdsong"); Birdsong was placed higher than Nikki on the salary scale, despite having less teaching experience, less tenure in the District, and despite Nikki being an Administrator for the two previous years.

30. Birdsong was paid $66,497 in base pay for his first year as an Administrator (2011-2012 school year), while Nikki was paid $65,304 for the same year, her *third* year as an Administrator (and as stated above, $57,461 in her first year).

31. Birdsong was initially going to be paid less, but complained that his salary according to the schedule was too low, and the District raised it to $66,497, which, upon information and belief, was Step 3 on the Administrative Salary Schedule for the 2011-2012 school year.

32. Birdsong himself has stated that Nikki's pay was unfair.

33. Nikki was not given a raise after similarly complaining about her pay.

34. Moreover, for the 2011-2012 school year, both Birdsong and another new

5

female Administrator, Stacie Miller ("Miller") were paid $66,487 and $67,385, respectively, and each were both paid exactly $69,659 in the 2012-2013 school year.

35. Before her promotion, Miller had 9 years of teaching experience at the district (and 12 total), as well as 3 years as a Department Chair before being promoted to Administrator in 2011; upon information and belief, Birdsong merely had 2 years of teaching experience.

36. Miller questioned why she would not get any credit for her additional years of experience in comparison to Birdsong, and the District informed her that prior teaching experience wasn't taken into account.

37. Miller also has two Master's Degrees in education, whereas Birdsong had only one.

38. On or around August 2, 2011, Nikki wrote a letter to Briggs complaining again about her pay, alluding to male counterparts Curry and Birdsong making more than her for equal work; Briggs stated that he was not considering a pay increase for Nikki.

39. In a follow-up e-mail on August 10, 2011, Nikki specifically asked Briggs why she was being placed on a lower pay step than "men with the same or less administrative experience and less teaching experience . . . ."

40. The District replied that it is "possible that [they] were preforming duties beyond their normal teaching duties at the time they became administrators"; however Nikki was told at numerous points that the District would not take into account duties beyond her normal teaching duties when determining her salary.

41. On or around February of 2012, the same school year Nikki first specifically cited sex-based pay discrimination in her pay complaints, Briggs and the District retaliated against Nikki for complaining about her Equal Pay Act, Title VII, and constitutional equal

6

protection rights; a proposal was made to the school board to "dissolve" Nikki's administrator position, and it was approved.

42. For the 2012-2013 school year, Nikki was told she was being put back into the classroom as a Special Education Teacher.

43. Nikki went to one of her supervisors, Paula Hubbard ("Hubbard"), the Director of Special Education, and inquired what would happen to her salary. Hubbard called Briggs who said, "I'm not going to cut [Nikki's] salary, we never paid her as an administrator anyway"; Hubbard wrote on a post-it note while on the phone "no salary cut."

44. Jim Parker, Director of Personnel, told Nikki that the "dissolution" of her position had nothing to do with her performance while hand-delivering her dissolution letter.

45. Nikki's first paycheck of the 2012-2013 school year reflected a cut in pay of nearly $10,000; her base pay went down to $56,243.

46. Upon information and belief, no other administrator had their position "dissolved" or their pay cut in Nikki's entire tenure with the District; Nikki's coworker Daren DePew (currently the Granite City High School Principal) also stated that he could never remember such a "dissolution" in his over 25 years there.

47. Jim Greenwald, the District's current Superintendent, and at the time, Nikki's supervisor as the High School's Building Principal, expressed deep sympathy because Nikki was so unfairly compensated.

48. Before the "dissolution," there were four Special Education Administrator positions (one of which was Nikki's); the reorganization was supposed to reduce that number to three positions, but after the "dissolution," two of the three remaining positions remained open due to terminations or retirements of other Special Education Administrators.

49. Instead of moving Nikki into one of the open positions, the District hired

7

Lynette Burnett ("Burnett"), and paid her approximately $90,000,[2] but gave her a job title different from that of Nikki's "dissolved" position.

50. Burnett was the wife of one of Briggs' best friends, had no administrative experience, barely had any teaching experience, and was asked to resign approximately three years later due to performance issues.

51. The remaining open position went to Beth Rapoff ("Rapoff"), who had no prior experience as an administrator, who did not even interview for the position, and whom the District also paid $89,283.

52. Neither Burnett nor Rapoff at that time had complained about EPA or Title VII rights.

53. The theatrics of hiring of Burnett and Rapoff into the remaining open Special Education Administrator positions, coupled with the "dissolution" of Nikki's position, was a transparent attempt to give pretext to an illegal act of retaliation against Nikki for complaining about EPA and Title VII rights.

54. For the 2014-2015 school year, Nikki reapplied for an Assistant Principal job.

55. During her interview, she was informed that Respondent now had a pay formula where starting Administrator pay was based on pay as a teacher the year before plus a certain percentage raise; for those employees making a jump from teacher to Administrator, the formula would give a pay increase that consisted of 10% of their base salary as a teacher, combined with a 2% pay increase for each month the Administrator worked beyond 9 months. (Exhibit C).

56. There is also a clause in the pay formula stating that if a person's administrative salary would be less than they were currently making when factoring

---

2  Burnett's salary is not listed on any of the District's public payroll data for any of the years she worked as Administrator, like all other Administrators' salaries are.

extracurricular stipends beyond the teacher's base salary, the extracurricular stipends would be incorporated into the Administrator's salary instead of the 10% raise. *Id*.

57. Nikki made less in 2014 as an Administrator ($70,624) than in both years 2012-2013 and 2013-2014 as a teacher because Respondent refused to use her extracurricular stipends paid as a teacher in determining her Administrator pay; however, Respondent gave male comparable Daren DePew ("DePew") an increase in base pay from $73,228 as a teacher in the 2013-2014 school year to $104,578 in the 2014-2015 school year as Principal, his first year as an Administrator.

58. Another male counterpart, David Keel ("Keel"), was promoted to Administrator three years before Nikki, but upon information and belief, for his first year as Administrator in 2006-2007, he started at Step 4, even higher than males Curry and Birdsong.[3]

59. Keel had less experience as a teacher when he was promoted to Administrator in 2006 as did Nikki in 2009, yet his presumed placement at Step 4 of the salary schedule was significantly higher than Nikki's placement at Step 1, despite his initial Administrator position requiring less responsibility and less complex work than that of Nikki's.

60. In August of 2014, the District gave a two-step pay increase to Keel that was a violation of the District's custom and practice to hand out one step increase per year, purportedly because it was "unfair" to pay him lower under the circumstances; Keel got a raise from $88,065 in the 2013-2014 school year to $96,560 in the 2014-2015 school year.

61. However, at the time Keel was given the two-pay-step raise, he was employed in one job class below that of Nikki: Elementary School Principal; this job class was paid less at each step in the salary schedule than Nikki's 12-month High School Assistant Principal job,

---

3 This number is arrived at by taking Keel's placement at Step 13 for the 2015-2016 school year and subtracting the nine years prior to this that he worked as an Administrator where a 1-pay-step raise was District policy.

9

and had less complex work and responsibilities; nevertheless, Nikki was paid $70,624 for the 2014-2015 school year, so with Keel at $96,560, at this point, he was getting paid 36.7% more to work a job of lesser responsibility.

62. Nikki again complained to the District about her pay in August of 2015, specifically citing gender discrimination in pay on her contract.

63. In August of 2016, Keel was promoted to 10-month Assistant High School Principal at Granite City High School, and now works the same job as Nikki at the same location, albeit for 10 months out of the year instead of 12.

64. Similar to Elemntary School Principal, 10-month High School Assistant Principal is still one job class below Nikki's 12-month High School Assistant Principal according to the salary schedule.  (Exhibit B).

65. Although the District has failed to publish it's administrative salaries for the 2016-2017 school year on its website as it has regularly done since 2008, if Keel received a 1-step increase for the current year, he would be receiving a salary of $102,320 for this current school year.

66. In summary, although Keel has less experience as a teacher and has been an Administrator for only three more years than Nikki (if you discount the two years she was illegally demoted), Nikki's salary for the current 2016-2017 school year is $74,713 at Step 6 of the pay schedule; Keel's pay at a presumed $102,320 in a job class below that of Nikki would put him at Step 14.  (Exhibit B).

67. The District's Director of Secondary Education, Cindy Gagich, has told Nikki multiple times that she is second in command at the High School, and when DePew (Principal) is out sick or on vacation, that Nikki is in charge of the entire High School, including David Keel.

68. For the 2015-2016 school year, male comparable Curry was at Step 9 on the pay schedule, and Nikki was at Step 5—in the same job category—even though they both started as Administrators in the 2009-2010 school year.

69. In mid-2016, Nikki learned through an in-service training with the District Attorney that her pay may indeed be discriminatory under both Illinois and Federal law; she filed a charge on September 29, 2016 with the IDHR after signing her 2016-2017 contract, and had it cross-filed with the EEOC.

70. Nikki's pay rate continues to be discriminatory to this present day, as via the formula and Administrative Pay Schedule, it is based on prior Equal Pay Act, 42 USC § 1983, and Title VII violations, including, but not limited to Nikki's starting salary as Administrator, the District's retaliatory demotion of Nikki, and the fact that the District has made exceptions to the salary schedule for similarly-situated males, but not for her.

71. The effect of the District's teacher-to-administrator pay formula, coupled with the Administrative Salary Schedule, has been not to provide a gender-neutral method of determining Administrator pay, but to lock in as policy Nikki's discriminatory pay from previous years that was motivated by her sex, female.

72. Despite this fact, the District refused to correct Nikki's discriminatory pay each time she complained, beginning in 2009 and continuing until the present day.

73. There is no legitimate, non-discriminatory reason for Nikki's sex-based pay deficit.

74. Defendants' conduct has caused Plaintiff to experience pain and suffering, humiliation, embarrassment, emotional distress, inconvenience, and loss of enjoyment of life.

75. Defendants' conduct was undertaken knowingly, willfully, maliciously or with reckless indifference to Plaintiff's protected rights.

### COUNT I – UNEQUAL WAGES UNDER THE EQUAL PAY ACT OF 1963 (against the District and Briggs)

76. Plaintiff realleges Paragraphs 1 to 75 of this complaint as if fully set forth herein.

77. The positions held by Plaintiff Nikki Petrillo and comparable males Keel and Birdsong, as Assistant Principal at Granite City High School, are or were performed in the same facility, under the same or similar working conditions, and the work of each position requires the same skill, effort and responsibility.

78. Defendants Briggs and the District have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, in the form of unequal pay, a violation of the Equal Pay Act, 29 U.S.C. §206(d).

79. Plaintiff is now suffering and will continue to suffer injury and monetary damages as a result of Defendants' discriminatory practices.

80. For reasons including but not limited to Plaintiff's numerous meritorious complaints and Defendants' refusal to correct them, the conduct of Defendants Briggs and the District was willful as defined by the EPA.

81. For reasons including but not limited to Nikki's numerous meritorious complaints and Defendants' refusal to correct them, as well as her subsequent illegal demotion, the actions of Defendants Briggs and the District were conducted in the absence of good faith as defined by the EPA.

### COUNT II – 42 U.S.C. § 1983: VIOLATIONS OF RIGHTS SECURED BY THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION UNDER COLOR OF STATE LAW (against Defendant Briggs)

82. Plaintiff realleges Paragraphs 1 to 75 of this complaint as if fully set forth herein.

83. Plaintiff is a member of a suspect class and was and is being unlawfully discriminated against because of her sex, female.

84. At all times relevant herein, Defendant Briggs was a policymaker for the District as it relates to Nikki's initial Administrator pay and August 2012 demotion back to a teaching position.

85. All of the actions taken by Defendant Briggs or those acting on behalf of Defendant Briggs and referred to herein, including the demotion of Nikki and denying her equal pay, were done by Defendant Briggs while acting under color or state of law and had the effect of depriving Plaintiff of rights, including but not limited to the right to contract, secured by the Constitution and laws of the United States—specifically the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

86. Defendant Briggs' acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights.

**COUNT III – VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(against the District)**

87. Plaintiff realleges Paragraphs 1 to 75 of this complaint as if fully set forth herein.

88. Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, female, in the form of unequal pay, in violation of Title VII.

89. Plaintiff is now suffering and will continue to suffer injury and monetary damages as a result of Defendant's discriminatory practices.

**COUNT IV – VIOLATIONS OF THE ILLINOIS EQUAL PAY ACT OF 2003 (against
the District)**

90. Plaintiff realleges Paragraphs 1 to 75 of this complaint as if fully set forth

herein.

91. Defendant's conduct in paying Plaintiff less than men as Assistant Principal is a violation of the Illinois Equal Pay Act of 2003, 820 ILCS 112/.

92. This action is brought within 5 years from the date of the underpayments alleged herein as required by the 820 ILCS 112/30(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court provide the following equitable and legal relief:

(a) declaratory and injunctive relief that the acts and practices complained of herein are in violation of Title VII, 42 U.S.C. § 1983 and the EPA, and enjoining the District from paying Plaintiff unequally moving forward;

(b) actual and compensatory damages against all Defendants jointly and severally, and punitive damages against Defendant Briggs under 42 U.S.C. § 1983; Plaintiff expressly does not seek punitive damages against the District;

(c) liquidated damages under the EPA;

(d) pre- and post-judgment interest as allowed by law;

(e) reasonable costs and attorneys fees incurred in bringing this action; and

(f) such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

COMES NOW Plaintiff, by her undersigned attorney, and demands a trial by jury in the above entitled cause of action under Rule 38 of the Federal Rules of Civil Procedure .

Dated: June 21, 2017
      Belleville, IL

        Respectfully submitted,

        THE LAW OFFICE OF VAN-LEAR P. ECKERT, PC

        John Stephen Brubaker (#6314685)
        One South Church Street
        Suite 500
        Belleville, IL 62220
        618-233-8800
        618-233-8807 (Fax)
        john.stephen.brubaker@gmail.com


        \_\_/s/John Stephen Brubaker_____
        John Stephen Brubaker (#6314685)